```
 1                 IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3   TECH PHARMACY SERVICES, LLC,    ) Docket No. 16 CV 10909
                                     )
 4          Plaintiff,               )
                                     ) Chicago, Illinois
 5             vs.                   ) December 7, 2016
                                     ) 9:00 o'clock a.m.
 6   ALIXA RX LLC, et al.,           )
                                     )
 7          Defendant.               )

 8

 9             TRANSCRIPT OF PROCEEDINGS - Motion
          BEFORE THE HONORABLE SAMUEL DER-YEGHIAYAN
10

11   APPEARANCES:
     For the Plaintiff:        HOGAN LOVELLS US LLP
12                             BY:  MS. JENNIFER A. FLEURY
                               700 Louisiana
13                             Suite 4300
                               Houston, Texas   77002
14
     For the Defendant:        GOULD AND RATNER LLP
15                             BY:  MS. STEPHANIE A. PETERSMARCK
                               222 North LaSalle Street
16                             Suite 800
                               Chicago, Illinois   60601
17

18

19

20

21
                    Laura LaCien, CSR, RMR, CRR
22                    Official Court Reporter
               219 South Dearborn Street, Suite 1902
23                    Chicago, Illinois   60604
                         (312) 408-5032
24

25
```

1    (The following proceedings were had in open court:)

2         COURTROOM DEPUTY:  16 C 10909, Tech Pharmacy versus

3  Alixa.

4         MS. FLEURY:  Good morning, your Honor.  Jennifer

5  Fleury appearing on behalf of Tech Pharmacy.

6         THE COURT:  Good morning.  Go ahead.

7         MS. PETERSMARCK:  Good morning, your Honor.

8  Stephanie Petersmarck on behalf of the non-party subpoena

9  respondent.

10         THE COURT:  Okay.  So the subpoena was issued for

11  who?

12         MS. PETERSMARCK:  I'm sorry, sir?

13         THE COURT:  Who was the subpoena issued for?

14         MS. PETERSMARCK:  Plaintiff issued the subpoena to

15  my client Design Integrity.

16         THE COURT:  Design Integrity.  And Design Integrity

17  is a Chicago or Illinois --

18         MS. PETERSMARCK:  A local small business, sir;

19  yes.

20         THE COURT:  And now there is motion by plaintiff

21  obviously for Design Integrity to comply with the subpoena,

22  right?

23         MS. FLEURY:  That is correct, as well as a motion to

24  transfer to the issuing court.

25         THE COURT:  So then the second motion was to

1   transfer, you know -- I think it's in Texas or something?

2           MS. FLEURY:  In the Eastern District of Texas; yes,

3   your Honor.

4           THE COURT:  In the Eastern District of Texas.  Is

5   there a division or something or it's --

6           MS. FLEURY:  The Eastern District, yes.

7           THE COURT:  Eastern District of Texas.  Do they like

8   have a division?

9           MS. FLEURY:  It's its own --

10          THE COURT:  Like Northern District of Illinois has

11  Western Division in Rockford, for example.  Do they have any

12  subdivisions?

13          MS. FLEURY:  I'm not aware of it.

14          THE COURT:  Okay.  Because a couple times when we

15  were dealing with a transfer, it turned out that that

16  transferee district had certain divisions.

17          MS. FLEURY:  I'm sorry.  I apologize, your Honor.  I

18  just had a slip of the brain.  It's Sherman Division.

19          THE COURT:  What?

20          MS. FLEURY:  My colleague reminded me it's Sherman

21  Division.

22          THE COURT:  Sherman, okay.  Thank you.  Just for

23  clarity in case the motion is granted.  I think you're doing

24  that under Rule 45?

25          MS. FLEURY:  That's correct, your Honor.

1       THE COURT:  Okay.  What's your view of the request
2  to transfer?
3       MS. PETERSMARCK:  Well, your Honor, we're strongly
4  opposed to it.  We believe that the motion to transfer is
5  just more harassment from plaintiff trying to involve us in
6  the games that they're playing with defendant.  We had timely
7  served --
8       THE COURT:  When you say "defendant," meaning your
9  client?
10      MS. PETERSMARCK:  No, sir.  The defendant --
11      THE COURT:  The defendant in the case in Texas?
12      MS. PETERSMARCK:  Correct.
13      THE COURT:  What's your relationship to that
14  defendant?
15      MS. PETERSMARCK:  Well, they are seeking from us
16  documents among other things -- the majority of the documents
17  they seek from us are documents between us and defendant back
18  from -- I want to say it was 2006 although plaintiff's
19  counsel will correct me.  I'm not as involved in the actual
20  details of their lawsuit.  They are requesting from us
21  communications and agreements and papers that we exchanged as
22  sort of an assessor for some project that defendant was
23  performing with plaintiff back then, your Honor.
24      So our position has been and we responded timely
25  within the 14-day period with responses and objections to

1  their terribly overly broad unduly burdensome discovery

2  requests, subpoena, and we then were contacted and had been

3  involved in many conferences with them.  We've spent more

4  than $15,000 responding to these subpoenas.  My client has

5  spent more than 40 hours of his own time that he had to take

6  away from running his business.  Plaintiff is still

7  unsatisfied.

8       Despite our valid objections on timely objections,

9  we agreed with plaintiff that we would attempt to comply with

10  their subpoena so long as they cover the costs.  Instead they

11  continue to harass us using eight attorneys now flying in --

12  two of them from Texas -- now trying to move us to Texas

13  where they know we can't afford counsel.

14       Rule 45(d)(1) requires a party or attorney

15  responsible for issuing and serving a subpoena must take

16  reasonable steps to avoid imposing undue burden or expense on

17  a person subject to subpoena.  The court for the district

18  where compliance is required -- that's this court -- must

19  enforce this duty and impose an appropriate sanction which

20  may include lost earnings and reasonable attorneys' fees on a

21  party or attorney who has failed to comply under

22  45(d)(2)(B)(ii).

23       THE COURT:  That's against you, right?

24       MS. PETERSMARCK:  Pardon me, sir?

25       THE COURT:  That's against you?

1        MS. PETERSMARCK:  No.  It's against plaintiff.

2        THE COURT:  Failure to reply or failure to comply.

3        MS. PETERSMARCK:  No, sir.  It's their failure to

4   take reasonable steps to avoid imposing an undue burden --

5        THE COURT:  I see.

6        MS. PETERSMARCK:  -- and expense on my client who is

7   not a party and is a local, a small business and is subject

8   to this court's jurisdiction.

9        THE COURT:  Okay.

10       MS. PETERSMARCK:  Not the jurisdiction of the

11  Eastern District of Texas.

12       THE COURT:  Okay.  Let me ask the simple question:

13  You have no interest in the case on the merits between

14  plaintiff and defendant in Texas, right?

15       MS. PETERSMARCK:  That is my understanding.  I've

16  tried to get information from plaintiff as to whether or not

17  that this was really a fishing expedition where they're

18  trying to bring us in.

19       THE COURT:  No.  That's not my question.

20       My question is, you as the attorney for Design

21  Integrity, you said -- does Design Integrity have any

22  interest in the litigation between plaintiff and defendant in

23  Texas?

24       MS. PETERSMARCK:  My position is no, sir, based on

25  what I know.

1          THE COURT:  Okay.  So you're not out there trying to

2    help the defendant, are you?

3          MS. PETERSMARCK:  No, sir.

4          THE COURT:  Okay.  I mean, you're not partners or

5    like affiliates?  You just had business with them?

6          MS. PETERSMARCK:  Correct.  With business and, as

7    far as I understand it, with plaintiff as well perhaps.  The

8    deal was between plaintiff and defendant and we were brought

9    in as some sort of third-party --

10         THE COURT:  I understand.  So counsel for plaintiff,

11   what does the request for Design Integrity relate to?

12         MS. FLEURY:  Two things, your Honor.  Design

13   Integrity's role in the underlying litigation is two-fold.

14   First, Design Integrity was a third-party consultant engaged

15   by defendants -- engaged by actually another third party,

16   Walgreens, in the underlying litigation to investigate and

17   conduct due diligence on the subject technology.

18         Your Honor, this is a patent case in the Eastern

19   District of Texas with 90 patent claims.  It is -- it also

20   involves claims involving trade secret, the theft of my

21   client's trade secrets and fraud claims.  The allegations

22   here --

23         THE COURT:  So the claims in a patent case, whatever

24   they are, the information that Design Integrity has, it's

25   relevant to the case in Texas?

1      MS. FLEURY:  That is correct.  It is highly relevant

2   to the case in Texas.

3      THE COURT:  Okay.  It's not like fishing expedition

4   that is being termed?

5      MS. FLEURY:  Absolutely not, your Honor.  And I'd

6   like to explain the role Design Integrity plays in this suit

7   because I think it will be helpful for evaluating both

8   motions before your Honor.

9      To make it simple, Design Integrity was conducting

10  due diligence on Tech Pharmacy.  We've learned through the

11  discovery process that Design Integrity authored a 200-page

12  engineering report -- just as an example of something we've

13  learned of recently, a 200-page engineering report on the

14  subject technology.  And then the second role that they

15  played in the underlying litigation, they were engaged by

16  defendants to perform engineering services in connection with

17  defendant's attempts to build a rival technology.

18      So Design Integrity, while a non-party to this suit,

19  possesses documents that are highly relevant to our client's

20  claims in this suit.  And so we seek first a motion to

21  transfer to the issuing court -- in this case the Eastern

22  District of Texas -- so that -- because that court has been

23  highly engaged in case management, in rulings involving

24  discovery as well as merits.

25      THE COURT:  Okay.  Has knowledge about the case and

1    the issues and the merits.  But could you have filed with

2    that court the issue of the subpoena?

3         MS. FLEURY:  My understanding is that we needed to

4    file here.

5         THE COURT:  Because the person who is subject to

6    subpoena is within the jurisdiction of the court here, that's

7    why any enforcement of subpoenas are filed with the court

8    that has jurisdiction over the subpoena receiver, right?

9         MS. FLEURY:  Correct.

10        THE COURT:  So how does that work if I transfer the

11   motion for enforcement of the subpoena to the court in Texas?

12   Does that mean that jurisdiction is now vested in the court

13   in Texas to enforce that subpoena on somebody who doesn't

14   live in Texas?

15        MS. FLEURY:  That's correct.  The rules allow

16   explicitly for transfers even absent consent by the subpoena

17   third-party.  And the rules say that -- for example, the

18   advisory committee notes on the rule explicitly mention case

19   management being one of the reasons and risk of inconsistent

20   rulings being another reason that provide that.

21        THE COURT:  I understand those things but then

22   jurisdiction will be vested in the transferee court --

23        MS. FLEURY:  That's correct.

24        THE COURT:  -- which is the original court of

25   jurisdiction over the case on the merits.

1          MS. FLEURY:  Correct, your Honor.

2          THE COURT:  Okay.  Counsel for Design Integrity, you

3   talk about all kinds of like expenses and harassment and why

4   couldn't you provide the requested information instead of

5   getting all kinds of litigation costs and everything else?

6          MS. PETERSMARCK:  So we have tried to -- our biggest

7   problem -- well, in addition to responding to the

8   overbreadth, we have been working with plaintiffs, is that we

9   were subject to a number of restrictive covenants, a number

10  of the agreements they asked for.  And, in fact, all of the

11  information or the majority of the information that counsel

12  just told you about is information they could get from

13  defendants but instead they've imposed this undue burden on

14  us.

15         We tried very hard from the day we got the subpoena

16  to try and gather the information to understand what it

17  means.  We were first confronted with a number of restrictive

18  covenants with non-parties and parties, including the

19  defendant.  We had to go and try and get permission from them

20  to release the information.  Some of the documents were not

21  even allowed to mention the name they're so restrictive.  So

22  we've gone through all of that, finally gotten the

23  permissions we could, produced those agreements and said to

24  plaintiff, look, we've -- it's already taken us this much

25  time and money, we will even subject to our objections give

1  this to you, all you have to do is agree to cover the costs.

2  Instead of covering the costs of having us produce the

3  information, they've spent all of this money filing a 76-page

4  motion to compel; now a motion to transfer.

5          It is unduly burdensome, sir, for us to have to go

6  to Texas.  We simply can't do it.  We also don't have the

7  time and money to actually be doing what they're requiring us

8  to do unless they agree to pay us for it, cover our costs,

9  that is to say.

10         So that's all we're asking the Court to do is

11 enforce 45(d)(1) as well as 45(d)(B)(ii).  We will work with

12 them as we've said we would do all along if they would agree

13 to cover your substantial expense and avoid undue burden on

14 my client.

15         THE COURT:  Okay.

16         MS. FLEURY:  If I may respond, your Honor, we have

17 been willing to engage in a discussion of cost-sharing

18 arrangements.  We have explicitly said that we would enter

19 into a cost-sharing arrangement.  We've asked for over a

20 month now for a concrete estimate of the costs of responding

21 to this subpoena.  They've had long enough now to provide us

22 with an estimate of those costs and they have failed to do

23 so.

24         I would also mention that again this process has

25 been ongoing.  We've had three concrete meet-and-confers.  We

1   have been willing to do whatever we could to reduce any

2   burden on Design Integrity.  What's at issue here is from the

3   day of -- from the first communication from counsel from

4   Design Integrity, they have said we are unwilling to produce

5   a single document until you agree, Tech Pharmacy, a blanket

6   agreement to cover 100 percent of the costs no matter what

7   those costs are and we understandably said that's not going

8   to work, we need to enter into a reasonable agreement, how

9   about we produce things incrementally.

10          Again, we've only been able to obtain from them 11

11  documents in this case and we know for a fact that they

12  have -- and she's told us that there is -- substantial other

13  responsive documents.

14          THE COURT:  Okay.  Counsel for Design Integrity, you

15  cited the rule talking about undue burden.  It looked like

16  what counsel for plaintiff is saying that they offered to

17  share that burden so that it's not an undue burden.  Why

18  wouldn't you do that?

19          MS. PETERSMARCK:  What she's just explained to you,

20  sir, is not accurate.  What we did is we've already spent the

21  15,040 hours.  Courts have found that 9,000 -- as little as

22  9,000 is already a substantial expense.  What we did is

23  say -- plaintiff said they'll cost-share but they won't agree

24  to actually pay.

25          So what happened was I said, listen, here are the

1  documents that my client has been able to say might contain

2  responsive information.  He's never been a defendant before.

3  He's never been a subpoena recipient respondent before.  He

4  can't tell you how much it's going to cost for him to review

5  all of these gigs of data and this volume of hard copies,

6  here's what we have, do you want to go in increments.  Say,

7  if you guys agree to cover our costs, we will go ahead and

8  have someone come in and like do the volume, tell us, we'll

9  go through search terms with you, we will try and work with

10 you.  They've -- the most they said is we'll share costs but

11 they won't say they'll cover the cost.

12        So our position, sir, is we've already spent what

13 courts have found to be a substantial amount and spent a lot

14 of time that we haven't been compensated for so we've already

15 met that burden of having spent a substantial expense.

16 Anything they want after that they should agree to cover the

17 cost in total.  We will go step by step.  If they say hey,

18 no, you know, that's more than we think we want to go

19 through, fine; we'll pull back.

20        I've also said if you want to identify for me --

21 this is the first I'm hearing of a report -- if they wanted

22 to identify for us a report or some other small volume of

23 documents, we'd be happy to review them and provide them if

24 we thought they were responsive and not otherwise

25 objectionable.

1          We are not trying to be litigious.  We actually want

2     the opposite.  We'd like the Court's assistance.  We don't

3     feel that plaintiff is being particularly candid, that they

4     are trying to a harass us and use us as some sort of pawn in

5     their litigation.  We don't want to be involved.  We will

6     give them whatever we're required to give them but we cannot

7     afford to keep playing these games.

8          THE COURT:  You made some serious accusations

9     against plaintiff and plaintiff's counsel and you better have

10    the facts to support those accusations.

11         Right now, I'll give you ten minutes to go out

12    there, chat with each other if you're willing to comply with

13    cost-sharing and then you voluntarily do so.  If not, I'm

14    going to give each one of you a short briefing schedule like

15    two days and then I will make a ruling on the motion to

16    transfer because counsel for Design Integrity, you already

17    answered the question whether the motion to transfer should

18    be granted or not in part by saying that there is all kinds

19    of restrictive covenants and that's why you don't want to

20    produce and the underlying court might be the best position

21    to rule on those issues so I'm just saying that, you know,

22    without making a decision but there are many issues that come

23    into play relating to a motion to transfer.  One of them is

24    what I just said.

25         So if you guys agree -- and let me point this out

1    that not complying with a subpoena and add-in costs does not

2    create the undue burden that you say you already met by

3    spending $9,000.  Otherwise, every recipient of a subpoena

4    might just delay complying with it, accumulate attorneys'

5    fees and say now the subpoena should be defeated because we

6    already met -- we spent money, this is unduly burdensome on

7    us.

8            So I'm suggesting that reasonable minds can come to

9    an agreement to cost-sharing and to decide whether you could

10   comply with the subpoena with the cost-sharing.  Otherwise,

11   I'll rule on the motion after I receive briefings from both

12   sides.  Meaning in two days, you'll answer in writing

13   plaintiff's motion to transfer and then plaintiff within two

14   days thereafter files its reply.  So today is December 7th.

15   By December 9th, you'll answer.  By December 12th, plaintiff

16   replies.  And I'll make a decision within the next one or two

17   days, so.

18           Why don't you chat out there to see if you could

19   resolve it?  I'll call the case back.

20           MS. FLEURY:  Thank you, your Honor.

21           THE COURT:  Okay.  Thank you.

22      (WHEREUPON the Court turned his attention to other

23   matters on his call; after which the following proceedings

24   were had in open court:)

25           COURTROOM DEPUTY:  16 CV 10909, Tech Pharmacy versus

1    Alixa.

2         MS. FLEURY:  Good morning, your Honor.  I think

3    we've made some progress.

4         THE COURT:  Okay.

5         MS. FLEURY:  We discussed --

6         THE COURT:  Can you identify again yourselves?

7         MS. FLEURY:  My apologies, your Honor.  I'm Jennifer

8    Fleury on behalf of Tech Pharmacy.

9         THE COURT:  Thank you.

10        MS. PETERSMARCK:  This is Stephanie Petersmarck on

11   behalf of Design Integrity, the non-party subpoena

12   recipient.

13        THE COURT:  Thank you.  Go ahead, counsel.  You may

14   continue.

15        MS. FLEURY:  So the progress that we've made is we

16   have discussed with counsel for Design Integrity that Tech

17   Pharmacy is willing to bear the costs of copying the paper

18   documents that she's identified today.  She's talked about a

19   stack of ten to 12 inches of paper documents identified as

20   potentially responsive and we're going to send someone to

21   copy those documents at our cost.

22        THE COURT:  Okay.

23        MS. FLEURY:  We've also talked about in terms of the

24   e-mail custodians, that we'll identify five custodians and

25   ten search terms and we can identify those by Friday at the

1  latest and she'll search e-mails in accordance with those

2  terms and provide them with our vendor electronically and

3  we'll bear the costs of printing and everything that happens

4  subsequently.

5       The issue that remains is that counsel for Design

6  Integrity has voiced continuing concerns about restrictive

7  covenants and has said that she needs a motion to compel

8  those documents in order for us to kind of go along with this

9  agreement that we've reached.

10      MS. PETERSMARCK:  Meaning that we need the Court to

11 compel us to produce responsive documents because some of the

12 parties to these restrictive covenants --

13      THE COURT:  You need a court order?

14      MS. PETERSMARCK:  Correct.

15      THE COURT:  Okay.  In order to ensure that the

16 underlying case has the ability -- the underlying case judge

17 to rule on the merits of the case, it would be appropriate

18 for me to order compelling the production of those

19 documents.

20      MS. FLEURY:  Thank you, your Honor.

21      MS. PETERSMARCK:  And then one other, sort of,

22 related issue and that is that, you know, our position is

23 that plaintiff should cover the costs of attorney review of

24 these documents since my client can't do that.  Plaintiff is

25 not agreeing to do that.  So whatever my client decides to do

1    as a result of that, our concern is that if he doesn't have

2    attorney review or even if he did and there was some

3    accidents, that if material that was not responsive to the

4    subpoena and so isn't covered by your Honor's order today --

5    for example, for other non-parties that have nothing to do

6    with this lawsuit gets caught up and produced inadvertently

7    to plaintiff and that that material is subject to other

8    restrictive covenants -- that we be allowed to claw it back

9    or otherwise that we haven't violated whatever other

10   restrictive covenants might exist with parties that aren't

11   involved in this lawsuit.

12        THE COURT:  Okay.  I don't like conditional orders

13   or things like that.  Right now if attorney for Design

14   Integrity reviews -- you're talking about reviewing the

15   covenants, the restrictive covenant documents that you are

16   aware of, right?

17        MS. PETERSMARCK:  No.  It's the others.  My client

18   because he often works for people in like sensitive

19   situations, some material that's outside of this lawsuit

20   might be intermingled with some of the stuff that we end up

21   producing.

22        THE COURT:  One second.  I'm saying you should only

23   produce things that relate to this case, not something

24   outside parties' information.  So it relates to

25   communications between the defendant and related

1   communications between Design Integrity.

2           So, counsel for plaintiff, you're seeking certain

3   documents, correct?

4           MS. FLEURY:  Correct, and --

5           THE COURT:  Counsel for Design Integrity says some

6   of those documents have, maybe, restrictive covenant, right?

7           MS. FLEURY:  Correct.

8           THE COURT:  Okay.  I'm saying only those documents

9   that you requested should be produced regardless of the

10  restrictive covenant.  That's all I'm saying.  I'm not going

11  to agree to the production inadvertently of other documents.

12  That's up to counsel for Design Integrity to decide that the

13  right documents are produced.  And if inadvertently something

14  is produced to counsel for plaintiff, maybe plaintiff's

15  counsel could return that immediately.

16          MS. FLEURY:  Absolutely, your Honor --

17          THE COURT:  And then I could issue --

18          MS. FLEURY:  -- in accordance with the rules.

19  Absolutely.

20          THE COURT:  -- a protective order right now orally

21  that there's a protective order relating to any such

22  documents that inadvertently might have been produced.  Would

23  that satisfy you?

24          MS. PETERSMARCK:  Thank you, sir.

25          THE COURT:  Okay.

1          MS. FLEURY:  Just one more thing, your Honor, I

2     wanted to make clear on the record, just that we've agreed --

3     we've reached agreement with counsel for Design Integrity as

4     to those paper documents that she's already identified.

5     She's going to have someone look at those and produce all

6     responsive documents from her subpoena.

7          THE COURT:  Correct.  And the only issue left is

8     whether there's going to be any attorney review and costs of

9     attorney review.  What's that about?

10          MS. FLEURY:  Again, our position, your Honor, is

11     that we've agreed to bear the costs of printing, of sending a

12     copier.  We're not required to bear the costs of any internal

13     review that they decide to do on their end.

14          THE COURT:  I think that's fair.  I think that's a

15     fair solution because the alternative could be a lot worse.

16     I think, you know, Design Integrity should review its own

17     documents and not be paid for by plaintiff's counsel.

18          MS. FLEURY:  Your Honor, one last issue.  Could we

19     set a date by which they will produce these documents?

20          THE COURT:  Oh, yeah.  I'm going to -- I'm not

21     dismissing -- I'm entering and continuing your motion to

22     transfer and your motion for enforcement of the subpoena

23     because now there is a potential resolution.

24          Counsel for -- let me ask first counsel for

25     plaintiff, when is your next hearing with the Texas court?  I

1    mean, U.S. District Court in Texas?

2         MS. FLEURY:  If you'll just give me a moment, your

3    Honor, I have the scheduling order.

4         THE COURT:  I just don't want to kind of delay any

5    case in Texas due to this, so.

6         MS. FLEURY:  Our discovery deadline currently is set

7    for March 17th.

8         THE COURT:  Okay.  We're good then.  Counsel for

9    Design Integrity, when can you produce these documents?

10        MS. PETERSMARCK:  The hard copy documents, sir, I

11   believe we could probably get within two weeks; hopefully

12   shorter.  I need to talk to my client.  And then the

13   electronic documents, we'll be waiting to receive from

14   plaintiff's counsel the search terms and custodians.

15        THE COURT:  Which you will do immediately, right?

16        MS. FLEURY:  We will do that by Friday, your

17   Honor.

18        THE COURT:  Okay.  Then try to respond to those

19   since they're electronic.

20        MS. PETERSMARCK:  So I'll say --

21        THE COURT:  -- within the same period.

22        MS. PETERSMARCK:  -- if we could have the same two

23   weeks --

24        THE COURT:  Two weeks.

25        MS. PETERSMARCK:  -- to at least identify to them

 1  what we're looking at and, you know, go make collection

 2  efforts after that.

 3          THE COURT:  Fair enough, fair enough.  Within two

 4  weeks.  What I'll do is I'll set a status early January, like

 5  January 12th, next status.  By then, everything should have

 6  been resolved.

 7          MS. PETERSMARCK:  One other thing, your Honor.

 8          THE COURT:  Sure.

 9          MS. PETERSMARCK:  I think we already talked about it

10  and counsel and I have agreed but some of the agreements that

11  we've gotten from other parties with these restrictive

12  covenants is that we designate all of the documents with the

13  highest level of protection as permitted by the court; and if

14  that's still agreeable to plaintiff's counsel, I just want to

15  get on the record that we're going to be designating all the

16  documents as -- I think it's --

17          MS. FLEURY:  Attorneys' eyes only.

18          THE COURT:  Yes.  I'm saying a protective order is

19  entered by me right now for those.  Okay.

20          MS. FLEURY:  And just to clarify, your Honor, the

21  January 12th status, there's a preliminary deadline in place

22  for two weeks, correct?

23          THE COURT:  Two weeks starts today.  By December

24  21st, they will produce you all the documents and the e-mail

25  information provided that you get to them within the next day

1 | or so, next couple days, the information.

2 |       MS. FLEURY:  Thank you, your Honor.

3 |       THE COURT:  Okay.  And then -- you know, let me do

4 | it by December 23rd instead of 21st.  Since you're going to

5 | take couple days, we'll add the two-week period with a couple

6 | days.  December 23rd.  Then we'll come back on January 12th.

7 | If all is resolved by December 23rd, then what I would

8 | suggest is you might just file a notice of, you know,

9 | striking both motions so that we don't come on January 12th.

10 | If you don't think it was resolved and you're not going to

11 | file a motion to strike the two motions, then we'll come on

12 | January 12th.  I've entered and continued both motions.  Then

13 | I'll decide what to do on those on January 12th.

14 |       MS. FLEURY:  Thank you, your Honor.

15 |       THE COURT:  Okay.  Any other questions?  Thank

16 | you.

17 |       MS. PETERSMARCK:  Thank you, Judge.

18 |       MS. FLEURY:  Thank you very much.

19 |    (Which concluded the proceedings in the above-entitled

20 | matter.)

21 |

22 |

23 |

24 |

25 |

1                          C E R T I F I C A T E

2               I hereby certify that the foregoing is a transcript

3      of proceedings before the Honorable Samuel Der-Yeghiayan on

4      December 7, 2016.

5

6      */s/Laura LaCien*
                                        December 8, 2016
7      _____              Date
       Laura LaCien
       Official Court Reporter
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25